UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------X

LEE KENWORTHY,

                       Plaintiff,

      -against-

HOUSING AUTHORITY OF BERGEN COUNTY,
ANTONINA LOCASCIO, individually,
LYNN BARTLETT, individually, and
ROBERT MOORE, individually,

                   Defendants.

-----------------------------------------------------------------X

Civil Case No: 2:17-1350

**COMPLAINT**

Plaintiff Demands A
Trial By Jury

Plaintiff, LEE KENWORTHY, (hereinafter referred to as "Plaintiff" and/or "KENWORTHY"), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant HOUSING AUTHORITY OF BERGEN COUNTY (hereinafter referred to as "HABC"), Defendant ANTONINA LOCASCIO (hereinafter referred to as "LOCASCIO"), Defendant LYNN BARTLETT (hereinafter referred to as "BARTLETT"), and Defendant ROBERT MOORE (hereinafter referred to as "MOORE") (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff brings this action, charging that the Defendants violated Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, The Fair Labor Standards Act of 1938 ("FLSA"), as amended, and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), based upon the supplemental

jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, sexual harassment, together with sexual assault, hostile work environment, retaliation and unlawful termination by Defendants.

## JURISDICTION AND VENUE

2.  Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, the ADA and FLSA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3.  Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4.  On or about May 13, 2016 Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5.  On or about November 30, 2016, Plaintiff received a Right to Sue Letter from the EEOC.

6.  Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7.  Venue is proper in this District based upon the fact that the events or omissions that gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

8.  Plaintiff is an individual man who is a resident of the State of New Jersey in the County of Bergen.

9.  At all times material, Defendant HABC is a governmental public corporation created under federal and state housing laws.

10. At all times material, Defendant LOCASCIO was and is a Field Operation Specialist for Defendant HABC.

11. At all times material, Defendant LOCASCIO had supervisory authority over Plaintiff with regard to his employment.

12. At all times material, Defendant BARTLETT was and is the Executive Director of Defendant HABC.

13. At all times material, Defendant BARTLETT had supervisory authority over Plaintiff with regard to his employment.

14. At all times material, Defendant MOORE was and is the Regional Property Manager for Defendant HABC.

15. At all times material, Defendant MOORE had supervisory authority over Plaintiff with regard to his employment.

## STATEMENT OF MATERIAL FACTS

16. Around October 2014, Plaintiff and his wife were informed by the Division of Child Protection and Permanency (hereinafter referred to as "DCPP") that Plaintiff would need to obtain stable employment and a place to live that would sufficiently accommodate his family in order to maintain custody of their children.

17. As a result, in or around November 2014, Plaintiff scheduled an interview with Defendant HABC.

18. Defendant HABC provides housing opportunities for low income families, elderly

individuals, and disabled individuals in Bergen County, New Jersey.

19. On or about December 8, 2014, Defendant HABC hired Plaintiff to work as a Superintendent of Defendant HABC's housing complex located in East Rutherford, New Jersey, (also known as "Boiling Springs Gardens"), located at 147 Hackensack Street, East Rutherford, New Jersey 07073.

20. As Superintendent, Defendant HABC provided Plaintiff an apartment within the complex.

21. At that time, Defendant LOCASCIO and Defendant MOORE were working in at the Boiling Springs Gardens location.

22. In or around December 2014, Plaintiff moved in to the Boiling Springs Garden building and began working immediately. However, Plaintiff did not yet have furniture in the apartment and slept on the concrete floor for several nights.

23. Plaintiff informed Defendant LOCASCIO and Defendant MOORE that he was married with children and that his family would be moving into the unit with him shortly thereafter.

24. Shortly after Plaintiff began working for Defendant HABC, Defendant LOCASCIO, Plaintiff's supervisor, made inappropriate sexual advances towards Plaintiff.

25. For instance, in or around December 2014, Defendant LOCASCIO approached Plaintiff and offered Plaintiff a massage, stating "Your body must be hurting from sleeping on that hard floor." Plaintiff respectfully declined Defendant LOCASCIO's offer.

26. On or about December 11, 2014, Plaintiff attended Defendant HABC's Christmas party. During the party, Defendant LOCASCIO informed Plaintiff that Defendant BARTLETT, Defendant HABC's Executive Director, "literally has to bend over with certain board members to keep them happy and keep the money flowing."

27. Plaintiff was stunned to learn that Defendant HABC's Executive Director was having sex

with board members in order to obtain funding. Before leaving the party, Defendant LOCASCIO warned Plaintiff in a sexually suggestive manner, "Be careful, what happens at the party, stays at the party."

28. In or around December 2014, Defendant LOCASCIO approached Plaintiff on numerous occasions and began to aggressively flirt with Plaintiff, finding any excuse to touch Plaintiff's body.

29. At the same time, Defendant LOCASCIO informed Plaintiff, "My fiancé is a court officer who works for family court. He is the one that kicks open the door when there's an order of removal. His mother had pull getting him the job because she works for Judge Mizdol. You know Judge Mizdol, don't you? " Defendant LOCASCIO proceeded to smile and wink at Plaintiff. Plaintiff was extremely uncomfortable with Defendant LOCASCIO's statements and was concerned as to how Defendant LOCASCIO knew about his ongoing issue with the DCPP regarding the custody of his children.

30. Defendant LOCASCIO informed Plaintiff that she had influence and control to materially and adversely affect Plaintiff's employment, and thus his case with the DCPP.

31. Plaintiff was mortified and began to suffer from severe anxiety and depression. The work environment turned hostile and Plaintiff feared for his well-being.

32. Subsequently, Defendant LOCASCIO made numerous sexual advances towards Plaintiff.

33. On numerous occasions throughout December 2014, Plaintiff repeatedly refused Defendant LOCASCIO's sexual advances.

34. However, in or around the end of December 2014, Defendant LOCASCIO entered a vacant apartment that Plaintiff was preparing for a new tenant. Defendant LOCASCIO instructed Plaintiff, "Rob will be gone for hours, we're doing this now." Defendant LOCASCIO

proceeded to say, "Don't act like you don't know what to do...better to keep it in the family than lose your job and family."

35. Defendant LOCASCIO proceeded to remove Plaintiff's belt, unzip his pants and perform oral sex on Plaintiff.

36. Plaintiff did not willingly consent to engage in this behavior with Defendant LOCASCIO; however, Plaintiff took Defendant LOCASCIO's statements as a threat to terminate his employment and effectively take away his children if he did not comply. Defendant LOCASCIO stated, "HABC is one happy family. As long as you're part of the family, your job and children are secure."

37. Defendant LOCASCIO proceeded to forcibly grab Plaintiff's penis and inserted it into her vagina, forcing Plaintiff to have sexual intercourse.

38. This was the start of a pattern and practice of quid pro quo sexual harassment of which Defendants subjected Plaintiff.

39. Defendants discriminated against Plaintiff on the basis of his sex/gender.

40. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender, and subjected Plaintiff to repeated acts of sexual assault and unwelcome sex under the threat of termination, retaliation, and harm to his children.

41. For the remainder of Plaintiff's employment, Plaintiff was riddled with severe fear and anxiety that Defendant LOCASCIO would use her power and influence over Plaintiff as a means of forcing Plaintiff to acquiesce to her sexual demands.

42. In addition to the repeated acts of sexual harassment and assaults by Defendant LOCASCIO, Defendant HABC's Regional Property Manager, Defendant MOORE, began to sexually harass Plaintiff.

43. Defendant MOORE repeatedly made sexual advances towards Plaintiff's wife, and asked Plaintiff intimate details of Plaintiff's sexual relationship with his wife.

44. In or around January 2015, while Plaintiff was working in a vacant apartment,  Defendant LOCASCIO entered the apartment and instructed Plaintiff, "If it's at least once a month I can deal with that. This apartment isn't as nice as the last one but I'm sure you could deal." Defendant LOCASCIO instructed Plaintiff that she wanted to have sexual intercourse again.

45. Plaintiff had anticipated this moment with horror. Plaintiff did not wish to engage in any sexual behavior with Defendant LOCASCIO, but felt compelled to submit to her demands for fear of losing his job.

46. In an effort to retain his job, but decline Defendant LOCASCIO's sexual advances, Plaintiff began to think of excuses to avoid engaging in any type of sexual activity with Defendant LOCASCIO. In fact, Plaintiff began to concoct any excuse imaginable.

47. Plaintiff responded, "I'm not trying to continue this Nina. Ever since last time I've been a bit itchy. I'm just saying, this isn't something I'm proud of." Defendant LOCASCIO replied "I'm sure you'll find a way around that…nice warm apartment for your family has to help. So, we're going to do this."

48. In a last ditch effort to rebuff Defendant LOCASCIO's persistent advances, Plaintiff responded by saying, "I'm not joking about the itchiness." Defendant LOCASCIO then added "Are you saying I gave you something?" Plaintiff responded, "No, I'm not saying that. I'm just saying I have an itch so you know." Plaintiff attempted to engage in corrective action by declining and rebuffing Defendant LOCASCIO's unwelcome sexual advance.

49. Defendant LOCASCIO approached Plaintiff and patted him down, removing Plaintiff's phones to make sure neither was recording. Defendant LOCASCIO put her mouth around Plaintiff's penis and performed unprotected oral sex on Plaintiff. Defendant LOCASCIO then placed a condom on Plaintiff's penis, lowered her pants down to her thighs, turned around, put her hands and elbows on the kitchen counter and told Plaintiff, "We're still doing this. You should hurry up. I don't have all day!" Defendant LOCASCIO then laughed and said, "Well, actually I do."

50. Once again, Defendant LOCASCIO force Plaintiff to engage in non-consensual sexual intercourse.

51. Defendant LOCASCIO commented, "So what do you think about round two, since you're finally playing ball?" Plaintiff attempted to decline, referring to his age and lack of stamina. When Defendant LOCASCIO continued to insist, Plaintiff then stated, "My wife is actually going to be home early today." Defendant LOCASCIO immediately stopped him and responded, "Enough said. At least we know - we got you, and you got us."

52. Plaintiff was stunned and continued to suffer from severe anxiety and depression.

53. Defendants discriminated against Plaintiff on the basis of his sex/gender.

54. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

55. In or around January 2015, approximately one week after the above incident, at 1:30 a.m., Plaintiff responded to a tenant's request to repair a leak that had flooded the tenant's apartment. After the leak was repaired, Plaintiff clocked in his overtime for that week which amounted to approximately twenty (20) hours. Defendant MOORE instructed Plaintiff to clock out and take a long lunch break, and added that Defendant BARTLETT would be speaking to Plaintiff about his overtime hours.

56. Later that day, Plaintiff was summoned by Defendant MOORE and noticed that all of his overtime had been eliminated, and that his regular hours had been reduced.

57. After Defendant MOORE's brief discussion with Plaintiff, Defendant BARTLETT approached Plaintiff, embraced him, and stated, "I hope you understand unless it's an emergency try to stay within 42 maybe, 45 hours per week even if necessary. As long as you understand what I'm saying, like you've already been told...team players get compensated in other ways. We take care of our own." Plaintiff responded, "Loud and clear." Defendant BARLETT stated: "HABC is family so as long as you're willing to play ball, so are we. And from what I've heard, you're going to be a great asset to the team." Defendant BARLETT then bumped her hips/buttocks into Plaintiff's hips as both walked down the hall toward the community room to attend a tenant meeting.

58. Around February 2015, Defendant MOORE continued to sexually harass Plaintiff and made inappropriate sexual comments about Plaintiff's wife.

59. On one occasion, in the presence of Plaintiff's seven (7) year old daughter, Defendant MOORE asked Plaintiff about the status of Plaintiff's marriage and asked Plaintiff if his wife was bisexual.

60. Plaintiff was extremely offended by Defendant MOORE's inquiry, especially in the presence of his child. However, Defendant MOORE did not stop there, Defendant MOORE told Plaintiff that he was at a party the night before and was able to, "get these dumb bitches to fall down drunk, then go topless and make out. So is that what's up with [your wife]? Is she in to girls threesomes?" Plaintiff was stunned by Defendant MOORE's statement. Plaintiff responded that it was none of MOORE's business.

61. Furthermore, during the course of their conversation, Defendant MOORE received picture

messages from Defendant LOCASCIO and shared them with Plaintiff. The pictures depicted Defendant LOCASCIO visibly drunk and wearing very little clothing.

62. As will be discussed more at length herein, it was later revealed to Plaintiff that Defendant MOORE and Defendant LOCASCIO were engaged in some type of sexual relationship.

63. Based on the aforementioned conduct, Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

64. In or around February 2015, once again Defendant LOCASCIO instructed Plaintiff that she intended to force Plaintiff to have sex with her once a month, and that, "it's coming up on just about that time."

65. On or about February 7, 2015, Defendant LOCASCIO forced unwanted sex on Plaintiff in Apartment LB. Defendant LOCASCIO told Plaintiff that she was making this apartment "free for us a little while longer." She added, "I'm getting off on the fact that your wife is right next door."

66. Despite all of the sexual harassment and sexual assaults taking place, ironically, around February 2015 Defendant held a mandated sexual harassment and discrimination training. During the training session, Defendant LOCASCIO and Defendant MOORE informed Plaintiff that certain employees of Defendant HABC were informally designated "untouchable," meaning they were impervious to any recourse or disciplinary action for their indiscretions. Notably, Defendant LOCASCIO, Defendant BARTLETT, and Defendant MOORE were included in the group of those employees designated "untouchable.

67. Several weeks after the training session, in or around March 2015, Defendant LOCASCIO continued her campaign of unrelenting unwelcome sexual advances towards Plaintiff, and

forced Plaintiff to have sex with her.

68. Defendants discriminated against Plaintiff on the basis of his sex/gender.

69. Defendants subjected Plaintiff to a hostile work environment on the basis of his gender, and was subjected to repeated acts of sexual assault and unwelcome sex under the threat of termination, retaliation, and harm to his children.

70. In or around April 2015, Defendant LOCASCIO informed Plaintiff that Defendant MOORE was looking for any excuse to reprimand Plaintiff but that she had calmed Defendant MOORE down. Defendant LOCASCIO demanded that in return for this "favor," Plaintiff needed to have sexual intercourse with her as payment. Once again, Defendant LOCASCIO forced unwanted sex on Plaintiff.

71. Defendant subjected Plaintiff to a hostile work environment on the basis of his gender, and was subjected to repeated acts of sexual assault and unwelcomed sex under the threat of termination, retaliation, and harm to his children.

72. Plaintiff continued to suffer from severe anxiety and depression as a direct result of the repeated and ongoing quid pro quo sexual harassment and hostile work environment.

73. Defendant LOCASCIO told Plaintiff that Defendant MOORE would no longer be a problem, as long as Plaintiff continued to have sexual intercourse with her. Defendant LOCASCIO added that if necessary she would involve the "higher ups" to deal with Defendant MOORE. Plaintiff asked how Defendant LOCASCIO would be able to accomplish that. Defendant LOCASCIO responded, "This company is about who you know and who you blow."

74. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender, and was subjected to repeated acts of sexual assault and unwelcome sex under the threat of

termination, retaliation, and harm to his children.

75. In or around May 2015, Plaintiff noticed that anytime he avoided Defendant LOCASCIO, the level of hostility and manipulation from Defendant MOORE would increase. Plaintiff met with Defendant LOCASCIO to discuss this further and was told, " I could help you keep your job but we expect your full appreciation, cooperation and gratitude for helping you." Plaintiff asked Defendant LOCASCIO what she meant by that. Defendant LOCASCIO replied, "Most of management is women… just keep that dick of yours available to the HABC family and we will keep him away from you."

76. Defendants discriminated against Plaintiff on the basis of his sex/gender.

77. Defendants subjected Plaintiff to a hostile work environment on the basis of his gender, and subjected Plaintiff to repeated acts of sexual assault and unwelcome sex under the threat of termination, retaliation, and harm to his children.

78. In or around May 2015, Plaintiff met with Defendant LOCASCIO, and another associate of Defendant HABC's, JIM (last name unknown) (hereinafter referred to as "JIM"). JIM was filling in for Defendant MOORE while Defendant MOORE was on vacation. JIM stated, "We'll have to address the situation and give Rob the spanking he deserves."

79. At this meeting, JIM informed Plaintiff that Defendant HABC was contemplating firing Defendant MOORE. JIM stated, "I wish little shit, no - he's solid here, between daddy and whoever he fucked for his promotion, because he has no clue how to do his fucking job. I'm sure you realize that by now. Antonina, it's pretty much a go at this point. You tell him I'm going to take off, I have to check on big boy's (Plaintiff's) other property."

80. Plaintiff asked Defendant LOCASCIO what JIM meant by his comments and whether Defendant LOCASCIO had informed JIM that Defendant LOCASCIO forced Plaintiff to

engage in unwelcome sexual acts with her. Defendant LOCASCIO responded, "Only people who are trusted confidants, no need to worry." Further, Defendant LOCASCIO informed Plaintiff, "Just because your troubles are behind you and the kids are safe, case closed, doesn't mean it's going to stay that way. That's up to you Lee. You want to know exactly what we are doing for you? Go grab yourself a condom and meet me upstairs without any issues. It's time you start seeing only what's to be gained. Now be quick 'cause I'm fucking horny!"

81. Defendant LOCASCIO made Plaintiff hand her both of his phones to assure that Plaintiff was not able to record her. Furthermore, Defendant LOCASCIO patted down Plaintiff to make sure he had no other recording devices on his person.

82. Defendants discriminated against Plaintiff on the basis of his sex/gender.

83. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender, and subjected Plaintiff to repeated acts of sexual assault and unwanted sexual conduct under the threat of termination, retaliation, and harm to his children.

84. Shortly thereafter, Defendant LOCASCIO informed Plaintiff that when Defendant MOORE returned from vacation, Defendant MOORE would be relocated to Defendant HABC's building located in Lyndhurst, New Jersey. Defendant LOCASCIO stated, "The building is all yours now." Defendant LOCASCIO also added, "Once he's officially moved to Lyndhurst. Lynn [Defendant BARTLETT] will be coming by to collect payment."

85. Defendant LOCASCIO instructed Plaintiff that in order to repay the favorable treatment he had been receiving, Plaintiff must sleep with Defendant HABC's Executive Director, Defendant BARTLETT.

86.  Defendants discriminated against Plaintiff on the basis of his sex/gender.

87.  Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender, and subjected Plaintiff to repeated acts of sexual assault and unwelcome sexual intercourse under the threat of termination, retaliation, and harm to his children.

88.  Plaintiff showed visible signs of disappointment and commented, "They own me." Defendant LOCASCIO then responded, "Stop being a bitch. Just play ball, Lee! Come on, I've seen how you both look at each other. You know you want to fuck her, and she obviously wants to fuck you - to put in all this work, to make you happy here. However, you have to find a way to deal when she comes to collect. Don't be such a bitch. Just keep in mind your family, your job, your kids - they are all still young, and a job with family can help you get past it and deal. You show her this, you'll have immediate problems! She likes and wants you Lee. Keep it that way. I'm going to get back to work. I suggest you do the same!" Defendant LOCASCIO then left Plaintiff, slamming the door on her way out.

89.  Defendant LOCASCIO instructed Plaintiff that in order to repay the favorable treatment he had been receiving, Plaintiff must sleep with Defendant HABC's Executive Director, Defendant BARTLETT.

90.  Defendants discriminated against Plaintiff on the basis of his sex/gender.

91.  Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender, and subjected Plaintiff to repeated acts of sexual assault and unwelcome sexual intercourse under the threat of termination, retaliation, and harm to his children.

92.  In or around June 2015, Defendant MOORE was permanently relocated to Defendant HABC's Lyndhurst office.

93.  In or around July 2015, Defendant MOORE contacted Plaintiff and suggested that Plaintiff

get a nanny to help take care of his children. Defendant MOORE told Plaintiff, "When you're looking for a nanny, try to get a cute one. Maybe between 23 to 27. Maybe brunette, but I like blondes too, as long as they're good looking." Plaintiff disregarded Defendant MOORE's statement; however, Defendant MOORE then said, "If everything gets back to normal and goes well with the nanny, maybe the four of us could go out, get away from the work atmosphere, blow off some steam, and really get to know each other." Plaintiff found Defendant MOORE's statement to be extremely inappropriate. Defendant MOORE instructed Plaintiff to hire an attractive nanny for Plaintiff's children, so that Defendant MOORE could take her on a double date with Plaintiff and his wife, and then insinuating that they would engage in some type of group sex acts.

94. Defendants discriminated against Plaintiff on the basis of his sex/gender.

95. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

96. Over the next several weeks, Defendant MOORE constantly badgered Plaintiff about the nanny and frequently asked to look at pictures of potential candidates. Furthermore, Defendant MOORE inquired as to whether Plaintiff's wife would be interested in having a threesome or foursome.

97. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

98. At about the same time, Defendant LOCASCIO became aware of Defendant MOORE's requests to Plaintiff. Defendant LOCASCIO told Plaintiff, "Don't get a girl for Rob. Just let me move in with you. I will eat the shit out of [your wife's] pussy. Could you imagine? That would be beautiful."

99. Plaintiff was appalled, deeply disturbed, and emotionally distressed by Defendant LOCASCIO's comments.

100. At all times material, Defendant LOCASCIO's sexual advances were unwelcome and rebuffed by Plaintiff.

101. Defendants discriminated against Plaintiff on the basis of his sex/gender.

102. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

103. In or around July 2015, on numerous occasions, Defendant LOCASCIO continued her unrelenting and escalating sexual advances towards Plaintiff. Defendant LOCASCIO demanded that Plaintiff show more appreciation for the fact that Defendant MOORE was no longer harassing him.

104. In or around July 2015, Defendant LOCASCIO informed Plaintiff, "Lynn [Defendant BARTLETT] should be stopping by soon as well, so make sure all the apartments you're working in are clean so she's comfortable. Don't worry too much. Rob's having all the carpets cleaned this week so that should help a bit. I'll let you know as long as she gives me a heads up. I doubt she's going to tell anyone other than me… especially not Rob. That boy is so jealous." Plaintiff informed Defendant LOCASCIO that he did not wish to have sex with Defendant BARTLETT.

105. Defendant LOCASCIO told Plaintiff the following week, "Lynn gave me the heads up Lee. She's coming either tomorrow or the next day. She's excited to see you. I told her you're good to go so don't disappoint!" Defendant LOCASCIO then laughed and added, "Ohhh, I want some more" as she grabbed Plaintiff's crotch and massaged his penis.

106. Plaintiff told Defendant LOCASCIO to stop and that he did not want to have sex with her or Defendant BARTLETT.

107. Defendant LOCASCIO completely disregarded Plaintiff's defeated plea and went on to say, "Once you get this done...you're one of HABC's 'untouchables' baby, and my life is set

for getting this done. So just have fun, fuck her right, and keep that smile on her face… it's one of the many reasons we hired you."

108. Defendants discriminated against Plaintiff on the basis of his sex/gender.

109. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

110. The following day, in or around July 2015, Defendant BARTLETT arrived at the East Rutherford location where Plaintiff worked. Defendant MOORE informed Plaintiff that Defendant BARTLETT had arrived, and requested that Plaintiff meet with Defendant MOORE and Defendant BARTLETT to show Defendant BARTLETT the improvements that Plaintiff had performed in a recently vacated apartment.

111. During the walk-through, Defendant BARTLETT asked Plaintiff to show her the improvements that Plaintiff had completed in the bathroom. Defendant MOORE stated that he needed to use the restroom first and asked that they allow him to go first.

112. Defendant MOORE excused himself to use the restroom, then Defendant BARTLETT informed Plaintiff, "I am truly sorry we missed our opportunity this morning to be alone and have some one on one time. I have big really big plans for you and I - we like how you have played your role. Hopefully we can find a good position that would keep you happy." Defendant BARTLETT proceeded to grab Plaintiff's penis over his pants and stated, "I bet you're dying to know what color underwear I wore for you today, or if I'm just like Nina and let it air out for you." Defendant BARTLETT heard the toilet flush and stepped away from Plaintiff as Defendant MOORE exited the bathroom.

113. Plaintiff was shocked and humiliated that Defendant BARTLETT had treated him like a piece of meat. Plaintiff found an excuse to leave the room and was able to escape any further advances from Defendant BARTLETT.

114. Later that same day, Defendant LOCASCIO told Plaintiff that Defendant BARTLETT was very impressed with his "package," telling Plaintiff, "I'll let you know when she will be back to have you. In the meantime, we get to still play. I heard she worked you up pretty good." Once again, Plaintiff attempted to rebuff Defendant LOCASCIO's advances and stated, "Another day. I've literally been up for almost 36 hours I need to get some sleep." During this exchange Defendant LOCASCIO stroked Plaintiff's penis over his pants.

115. In or around August 2015, Defendant MOORE continued to harass Plaintiff about finding a "hot" nanny that Defendant MOORE could date. Furthermore, Defendant MOORE continued the inappropriate and unwelcome questions regarding Plaintiff's wife's sex life.

116. On one occasion, Defendant MOORE stated, "You should let [your wife] pick the [nanny] because ultimately, if all is going to go REALLY well, it is going to need to be [your wife's] pick. Someone she should be compatible with."

117. Plaintiff was disgusted by Defendant MOORE's unrelenting sexual harassment.

118. Defendants discriminated against Plaintiff on the basis of his sex/gender.

119. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

120. In or around August 2015, Plaintiff and his wife hired a nanny. Defendant MOORE commented on a potential applicant that did not receive the job as being, "too young and not slutty enough."

121. Shortly thereafter, in or around mid-August 2015, Defendant MOORE shared with Plaintiff the fact that Defendant MOORE was currently in an ongoing relationship with an employee of Defendant that was currently married. Defendant MOORE told Plaintiff that when Defendant MOORE had worked in the office, him and this woman would "go to a hotel together, get drunk, have sex, and sometimes not even return back to work." Plaintiff

was shocked and appalled by Defendant MOORE's confession, even more so that this behavior took place during the work day.

122. Defendants discriminated against Plaintiff on the basis of his sex/gender.

123. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

124. During the same conversation, Defendant MOORE shared with Plaintiff that Defendant MOORE and this woman also had sex after one of Defendant HABC's Christmas parties. Defendant MOORE stated that they had sex in her car, and that it turned Defendant MOORE on that the woman's husband kept calling her while they were having sex.

125. Defendants discriminated against Plaintiff on the basis of his sex/gender.

126. Defendants subjected Plaintiff to a hostile work environment on the basis of his sex/gender.

127. After Plaintiff had hired a nanny for his children, Defendant LOCASCIO increased the frequency and severity of her sexual advances towards Plaintiff.

128. On or about August 17, 2015, Defendant LOCASCIO entered one of the apartments that Plaintiff had finished preparing. Defendant LOCASCIO instructed Plaintiff, "Although you're good here… it doesn't mean I can't fuck with your life. I can tell your wife and no matter what, that will cause some shit to go down." Plaintiff begged Defendant LOCASCIO not to discuss the matter with his wife. Defendants LOCASCIO instructed Plaintiff that she would not say anything as long as Plaintiff had sexual intercourse with her. Once again, Defendant LOCASCIO attempted to force Plaintiff to engage in unwelcome sex.

129. Plaintiff felt helpless and did not wish to continue to be forced to have sex with Defendant LOCASCIO.

130. Plaintiff told Defendant LOCASCIO that Plaintiff had already had sex that morning with

his wife and was not feeling up to it. Defendant LOCASCIO approached Plaintiff and began to slowly swing her buttocks near Plaintiff's penis. Plaintiff attempted to leave the room. Defendant LOCASCIO instructed Plaintiff that he could not leave until he satisfied her. Defendant LOCASCIO pulled down her skirt and motioned for Plaintiff to pleasure her with his hands. Defendant LOCASCIO forced to Plaintiff to engage in sexual behavior against his will.

131. Defendant LOCASCIO then insisted on performing oral sex on Plaintiff. Plaintiff told Defendant LOCASCIO that he was not interested. Defendant LOCASCIO insisted and told Plaintiff "I've been curious as to what [your wife] tastes like. Don't make me give anyone some bad news, like you turning down what you should be thankful for." Defendant LOCASCIO then proceeded to perform unwelcome oral sex on Plaintiff.

132. In or around September 2015, Plaintiff pressed Defendant MOORE to reveal the woman with whom he was having an affair with at HABC. Defendant MOORE finally relented and admitted the woman was Defendant BARTLETT.

133. Defendant MOORE went on to say, "So long as I'm always willing to play ball, I know I'll get to retire in my forties pretty well off, you know what I mean?" Defendant MOORE then stated, "Plenty of perks when you play ball, Lee. Let me know when you got the girls ready for our date."

134. Plaintiff was astounded at the egregious and pervasive nature of the sexual harassment and hostile work environment that took place while working with Defendant HABC.

135. In or around November 2015, Plaintiff requested several days off in December 2015 to care for a seriously ill family member.

136. Defendant MOORE granted Plaintiff's request.

137. On or about November 6, 2015, Plaintiff revealed to his wife the numerous and repeated acts of unwelcome sex forced upon him by Defendant LOCASCIO and Defendant BARTLETT. Plaintiff's wife immediately confronted Defendant LOCASCIO.

138. At the same time, Plaintiff went to Defendant MOORE and explained the constant and unrelenting sexual harassment and assaults to which Defendant LOCASCIO and Defendant BARTLETT subjected Plaintiff.

139. As a result of Plaintiff's complaints of quid pro quo sexual harassment and hostile work environment against Defendants, on or around November 20, 2015, Defendant HABC transferred Defendant LOCASCIO to HABC's Riverdale facility with a promotion and increase in salary.

140. Plaintiff was stunned and felt as though his efforts to remedy the situation were futile.

141. In or around December 2015, Plaintiff discussed his complaints, and Defendant LOCASCIO's subsequent promotion, with Defendant MOORE.

142. On or about December 3, 2015, Plaintiff was scheduled to take previously requested time off to deal with some major health and family issues. The time off had previously been approved by Defendant MOORE. Defendants informed Plaintiff that the leave was not approved and would be deemed unauthorized absences.

143. Plaintiff protested Defendants deeming the leave unauthorized absences since they had been previously approved.

144. On or about December 7, 2015, Defendants designated Plaintiff's absences as unauthorized and terminated Plaintiff's employment.

145. Defendants terminated Plaintiff on the basis of his sex/gender.

146. Defendants discriminated against Plaintiff on the basis of his associated disability and

request for time off to care for a seriously ill family member.

147. Defendants retaliated against Plaintiff on the basis of his associated disability and request for time off to care for a seriously ill family member.

148. Defendants subjected Plaintiff to an adverse employment action in retaliation for engaging in protected activity, by making complaints of discrimination, sexual harassment, hostile work environment, and repeated sexual assaults.

149. Defendants' reason for terminating Plaintiff's employment was merely pretextual, as the time off request was previously approved and the adverse employment action came merely weeks after Plaintiff complained of sexual harassment and protested their decision to deny his request for time off.

150. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

151. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

152. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

153. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants, jointly and severally.

154. The above are just some of the examples of unlawful, discriminatory, and retaliatory

conduct to which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (AGAINST DEFENDANT HABC)

155. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

156.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

157. "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,        conditions, or privileges of employment, because of such individual's race, color,religion, sex, or national origin; . .."

158. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of his sex/gender, together with sexual harassment and causing a hostile work environment based on the same.

159. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

160. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (AGAINST DEFENDANT HABC)

161. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

162. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer:

163. "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

164. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of his employment because of his opposition to the unlawful employment practices of Defendants.

165. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION
### UNDER NEW JERSEY STATE LAW
### DISCRIMINATION
### (AGAINST ALL DEFENDANTS)

166. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

167. New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in pertinent part as follows:

168. "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for

service in the Armed Forces of the United States or the nationality of any individual, or

because of the refusal to submit to a genetic test or make available the results of a genetic

test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire,

unless justified by lawful considerations other than age, from employment such individual

or to discriminate against such individual in compensation or in terms, conditions or

privileges of employment."

169. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section

10:5 et seq., by  discriminating against the Plaintiff because of  his sex/gender, together

with sexual harassment and causing a hostile work environment based on the same.

170. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

the NJLAD Section 10.

171. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION
## (AGAINST ALL DEFENDANTS)

172. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

173. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful

discriminatory practice:

174. "For any person to take reprisals against any person because that person has opposed any

practices or acts forbidden under this act or because that person has filed a complaint,

testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or

interfere with any person in the exercise or enjoyment of, or on account of that person

having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

175. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 et seq., by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, terminating Plaintiff's employment, because of Plaintiff's opposition to Defendants' unlawful employment practices.

176. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**UNDER NEW JERSEY STATE LAW**
**AIDING AND ABETTING**
**(AGAINST ALL DEFENDANTS)**

177. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

178. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice: "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

179. Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 et seq., by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

180. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**UNDER THE FAIR LABOR STANDARDS ACT**
**OVERTIME**
**(AGAINST ALL DEFENDANTS)**

181. Plaintiff repeats, reiterates and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

182. Defendants willfully employed Plaintiff in the aforementioned enterprise for work weeks
longer than 40 hours and failed to compensate Plaintiff for his employment in excess of 40
hours per week, at a rate of at least one and one-half times the rate at which he was
employed.

183. Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C.
§201 et seq. and its implementing regulations.

184. Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA, was a
direct violation of the FLSA, specifically 29 U.S.C. §207.

185. Defendants' failure to pay proper overtime wages for each hour worked over 40 per week
was willful within the meaning of 29 U.S.C. §255.

186. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**

187. Plaintiff repeats, reiterates and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

188. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990
(Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United
States Code, beginning at section 12101.

189. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

190. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his associated disability.

191. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the ADA.

192. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT

193. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

194. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

195. Defendants engaged in unlawful employment practice prohibited by the above statute, by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of

Defendants.

196. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendant in an amount to be determined at trial for all emotional distress, lost wages, back and front pay, punitive damages, liquidated and statutory damages, attorneys fees, costs and interest and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated:   New York, New York
         February 27, 2017

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

Zack Holzberg, Esq.
30 Broad Street, 35th Floor
New York, NY 10004
(212) 587-0760